(No. 27709.—

THE PEOPLE *ex rel.* William H. Shriver, Appellee, *vs.* J. NORMAN FRAZIER *et al.,* Appellants.

*Opinion filed May 16, 1944.*

JOHN T. INGHRAM, and WILSON & SCHMIEDESKAMP, both of Quincy, for appellants.

MARTIN, IRWIN & GARRETSON, of Carthage, for appellee.

Mr. JUSTICE MURPHY delivered the opinion of the court:

The State's Attorney of Adams county on the relation of William H. Shriver, filed a complaint in the circuit court of that county to require J. Norman Frazier, Victor H. Shriver, A. B. Leeper, Travis McAllister and Everett Orr, to show by what warrant they held the offices of members of the board of education of Lima Community High School District No. 70. Defendants answered, setting forth the proceedings by which the district was organized and the defendants elected as members of said board. Plaintiff moved to strike the answer, urging various objections, all of which were overruled except the objection to that part of the answer which referred to the report of the Superintendent of Public Instruction and as to it the motion was sustained. It was held that the defects in the report of the Superintendent rendered the organization proceeding a nullity. A judgment was entered against the defendants.

In January, 1943, a petition asking that certain territory therein described be organized into a community high school district was filed with the county superintendent of schools of Adams county. It was filed under section 89a

of the School Law. (Ill. Rev. Stat. 1943, chap. 122, par. 97.) Immediately after the receipt of the petition, the county superintendent of schools of that county transmitted a notice of the filing of such petition to the Superintendent of Public Instruction as was required by section 89c (par. 97b) of said act. Said section 89c directs that upon receipt of such notice, the Superintendent of Public Instruction shall, in co-operation with the superintendent of schools of the county or counties in which the territory of the proposed district is located, study the territory of the proposed district and high school needs and conditions of such district and the area within and adjacent to the proposed district. It provides that he shall determine whether the territory described in the petition forms a compact and contiguous area and if he finds such fact to be present and that the petition is in due form, it becomes his duty to prepare and file with the county superintendent of schools a "brief report" concerning the proposed high school district. It provides that the report shall state: (a) whether or not the Superintendent of Public Instruction deems it possible for the proposed district to provide a recognized four-year high school at reasonable costs, (b) the conditions upon which such operation would be possible, (c) the estimated results of such operation in terms of local tax rates, (d) the nature and probable cost of alternative methods of providing adequate high school educational opportunities for children in the territory involved, and (e) such other information as in the opinion of the Superintendent of Public Instruction may be helpful to the voters in such territory in voting on the proposition to establish a high school district. After the report is received by the county superintendent of schools it is his duty to cause a copy of the same to be published in a newspaper of general circulation in the territory described in the petition. It must be published ten days prior

to the election at which the proposition for the establishment of the district is submitted.

The Superintendent of Public Instruction filed a report and the same was duly published as required by statute. The questions here are as to the sufficiency of the report. The Superintendent of Public Instruction found the territory to be compact and contiguous; that the territory included in the proposed district constituted a community for school purposes, and that the assessed valuation of the property and the population of the district exceeded the minimum requirements fixed by statute. The report contained a finding that the Superintendent of Public Instruction deemed it possible for the proposed district to provide a recognized four-year school program at reasonable cost upon condition that a high school building be constructed somewhere near the center of the proposed district where it would be readily accessible to children residing in the remote parts of the district. It contained the further finding that the proposed site for the location of the school building was at Marcelline in the eastern part of the district, but that the school facilities in use at that place were inadequate for maintaining a four-year high school; that the communities of Lima and Ursa in said district each operated a high school giving a three-year course but that the buildings used in those places were not suitable to maintain a four-year course, and that the cost of construction would be excessive and, due to present war priorities on material, probably impossible. He found that the proposed plan of two years of high school at Lima and two at Ursa in the school buildings already in use would be inadvisable, and that such plan would not comply with the law and such a school could not be recognized as an accredited school. He further found that due to the size of the proposed district it would be necessary to provide transportation for children residing at a distance from the high

school building but that from the facts available and a study of the proposed territory, he gave it as his conclusion that an election should be called submitting the question of whether a community high school district should be organized.

Plaintiff contends the report of the Superintendent of Public Instruction wholly failed to meet the requirements of section 89c (97b) in the following particulars: (1) that it did not contain the superintendent's estimated results of operating a high school in said district "in terms of local tax rates" and (2) that it did not give the nature and probable cost of alternative methods of providing adequate high school educational opportunities for children in the proposed district. Plaintiff contends the statute as to said matters should be construed as mandatory and failure to comply renders the organization of the district a nullity.

Defendants do not claim the report shows a full and complete compliance with the statute but they argue for a directory construction and contend that if the statute is so construed, a substantial compliance would be sufficient and that the report meets such requirement.

The object in construing a statute is to determine and give effect to the legislative intent. To ascertain such intent courts shall take into consideration the whole act, the law as it existed prior to its passage, the changes made by the new act and the purpose for making such changes. *People ex rel. Kerrick* v. *Comrs. of Highways,* 270 Ill. 141; *Soby* v. *People,* 134 Ill. 66; *Stribling* v. *Prettyman,* 57 Ill. 371.

Section 89c was added to the School Law in 1941. Prior to that time there was no provision in the law that contained any requirement similar to those set forth in the new act. It is conceded that the part of the section which requires the Superintendent of Public Instruction to determine whether the area is compact and contiguous was complied with and plaintiffs agree that such provision may be

considered mandatory but they argue that a statute may be mandatory as to one requirement and directory as to another. They cite 59 Corpus Juris, sec. 630, page 1072. In view of the contentions made, it is not necessary to consider the first part of the statute, for the only part material here is the provision which requires the Superintendent of Public Instruction to make a report to the county superintendent of schools in reference to certain matters.

The general purpose of such provision is evidently to provide a means by which the voters of a proposed high school district would be furnished with information pertaining to the operation of a four-year high school in the proposed area. The statute requires the giving of estimates of the cost of operation of a school, expressed in terms of a tax rate; suggestions as to alternative methods by which children residing in the district might have the advantages of a high school education and the probable cost of such alternatives, and other matters, all of which are of vital importance to a voter in determining whether he should vote for or against the organization of a district. It is significant that the legislature selected the head of the public school system of the State to furnish such information. By such provision it evidently intended that such estimates and conclusions should come from an informed, reliable and impartial source. It also directed the publication of such report in some newspaper of general circulation in the area proposed for the district. The publication of the report was to precede the election. The character of the information required to be furnished clearly reflects the purpose for the enactment, and the importance of making such information available to the voters is not debatable. The furnishing of such information to the voters is the essence of the act. The only means provided by law for furnishing it is through the publication of the report of the Superintendent of Public Instruction. Thus the

very purpose of the statutory requirement, namely to furnish information to the voters, is defeated if the requirements of the statute are not complied with.

Section 89a was first enacted in 1919. There have been various amendments to the section, the last being in 1941. It was enacted at the same time that section 89c was added to the law and the amendment was made to give effect· to 89c. Prior to the amendment section 89a authorized a county superintendent of schools with whom a petition had been filed for the organization of a high school district under the statute, to act at once and call an election submitting to the voters of the proposed district the proposition of organizing a community high school. The amendment changed the provision for immediate action by the county superintendent of schools and directed that he should call the election "after compliance with section 89c." It is apparent that by the amendment of section 89a, the legislature intended to make action by the county superintendent of schools, in calling the· election, dependent upon the previous compliance with section 89c.

There is nothing in the act which evidences an intent of the General Assembly that compliance with section 89c shall be anything less than full compliance. This means that the Superintendent of Public Instruction shall file a report with the county superintendent of schools which contains the matters specified in section 89c. ·A construction of the statute which would permit anything less than full compliance would open the door to question what should be included and what might be omitted. These deductions lead to the conclusion that requirements of 89c are mandatory and must be complied with before the county superintendent of schools has the power to call an election. The report filed in this case was made in good faith and no doubt with the intent of complying with the law. But the statute is specific as to what shall be included, and the report filed fails to meet such requirement.

Defendants cite cases for the principle that elections will not be defeated by reason of failure of officials to properly perform their duties. The principles announced in those cases are not controlling for the reason that in this case the validity of the organization depends on whether there was a validly called election, and since the power of the county superintendent of schools to call the election was dependent upon compliance with section 89c, it follows that the county superintendent of schools called the election without authority so to do.

Defendants' final contention is that since the relator participated in the election and permitted the organization to proceed without objection, he can not now make complaint. That raises a question of *laches* which, under the authority of *People ex rel. Cole* v. *Kinsey,* 294 Ill. 530, and *People ex rel. Meishner* v. *Keigwin,* 256 Ill. 264, cannot be sustained. The latter case was instituted to require the school directors of a certain school district to show by what warrant they claimed to hold the office of school directors. In considering this same question, the court said: "Neither the *laches* nor acquiescence of individuals can bar the public, nor will the conduct of a relator constitute an estoppel except where the information is filed for his private and exclusive benefit. [Citation.] The State is certainly interested in the legality of the organization of its school districts. An information by the State's Attorney calling upon school directors to show by what warrant they act in that capacity is necessarily a question of public concern which cannot be barred by the conduct or acquiescence of the relators or their approval or ratification of illegal proceedings."

. For the reasons assigned, the judgment of the circuit court is affirmed.

*Judgment affirmed.*