(No. 30275.—

THE PEOPLE *ex rel.* Russell P. Shriver *et al.,* Appellants, *vs.* J. NORMAN FRAZIER *et al.,* Appellees.

*Opinion filed November 20, 1947.*

John T. Reardon, State's Attorney, of Quincy, Leon L. Lamet, of Warsaw, Harris & Harris, of Macomb, and John P. Deege, of Quincy, for appellants.

John T. Inghram, and Wilson & Schmiedeskamp, both of Quincy, for appellee.

Mr. Justice Thompson delivered the opinion of the court:

The State's Attorney of Adams County, on the relation of Russell P. Shriver, filed a complaint in *quo warranto* in

the circuit court of that county against the defendants, charging them with unlawfully holding the purported office of members of the board of education of purported Community High School District No. 80 of Adams and Hancock counties. The complaint challenged the legal existence of the district and called upon the defendants to show by what warrant and authority they purported to hold office as a board of education. The defendants filed their answer, setting out in detail the various procedural steps under which the organization of the district and the selection of a board of education had been effected. Plaintiff filed a motion to strike defendants' answer and for a judgment of ouster. A similar motion was filed by five individuals who had been permitted to intervene as relators. The motions were overruled. The State's Attorney and the relators elected to abide by the motions, and the court thereupon entered judgment sustaining the organization of the district and the right of defendants to hold their office. From that judgment this appeal is prosecuted by the State's Attorney on behalf of the relators.

The following facts appear in defendants' answer and are admitted by the motions to strike: August 6, 1945, a petition was filed with the county superintendent of schools of Adams County, requesting him to call an election for the purpose of voting upon the proposition to establish a community high school within certain compact and contiguous territory therein described, having a population of not less than 1500 persons and an equalized assessed valuation of not less than $1,000,000. The territory was situated in Adams and Hancock counties, the greater part thereof being in Adams County. The petition was signed by more than 100 legal voters residing in the territory described therein. After the filing of the petition, the county superintendent of schools of Adams County transmitted a notice of such petition to the Superintendent of Public Instruction. Upon receipt of such notice, the Super-

intendent of Public Instruction, in co-operation with the county superintendents of schools of Adams and Hancock counties, studied the territory of the proposed district and the high school needs and conditions thereof and the area within and adjacent thereto, and found the territory involved to be compact and contiguous, and on November 20, 1945, filed with the county superintendent of schools of Adams County a report prepared by him concerning the proposed community high school district. The report stated that, in the opinion of the Superintendent of Public Instruction, it was possible for the proposed district to provide a recognized four-year high school program at reasonable cost and stated the conditions under which such operation would be possible. It also stated the estimated results of such operation in terms of local tax rates, and the nature and probable cost of alternative methods of providing adequate high school educational opportunities for children in the territory involved. The report was published May 27, 1946, and on the same day the county superintendent of schools of Adams County ordered an election to be held on June 8, 1946, for the purpose of voting for or against the proposition to establish a community high school. He established polling places and appointed judges and clerks, and on May 29, 1946, posted notices of the election to be held on June 8, 1946. A majority of the votes cast at the election favored the organization of the district, and thereafter the defendants were elected as its board of education.

Appellants contend that the report of the Superintendent of Public Instruction did not comply with the requirements of section 13 of article 10 of the School Code, in that it failed to give the estimated results of providing a four-year high school program in the proposed district in terms of local tax rates, and therefore the county superintendent had no power to call the election held June 8, 1946, to vote on the establishment of the district. Section 13 of article 10 of the 1945 School Code, (Ill. Rev.

Stat. 1945, chap. 122, par. 10-13,) which was section 89c of the former School Law, (Ill. Rev. Stat. 1943, chap. 122, par. 97b,) directs that when a petition for the organization of a community high school district has been filed with the county superintendent of schools, such county superintendent of schools shall promptly transmit a notice of the petition to the Superintendent of Public Instruction, who shall, in co-operation with the superintendent of schools of the county or counties in which the territory of the proposed district is located, study the territory of the proposed district and the high school needs and conditions thereof and the area within and adjacent thereto, and if he finds the territory involved to be compact and contiguous, he shall prepare and file with the county superintendent of schools a brief report concerning the proposed high school district. This section of the statute provides that the report shall state, among other things, whether or not the Superintendent of Public Instruction deems it possible for the proposed district to provide a recognized four-year high school program at reasonable cost, the conditions under which such operation would be possible, and the estimated results of such operation in terms of local tax rates.

It is appellant's contention that the estimated tax rate of 25 cents for building purposes, contained in the report of the Superintendent of Public Instruction, was inaccurate and wholly inadequate to finance the building operations recommended in the report, and that therefore the report did not state the estimated results of operating a high school in terms of local tax rates, as required by the statute. They rely upon the case of *People ex rel. Shriver* v. *Frazier,* 386 Ill. 620, in which it was held that the requirements of this section of the statute are mandatory and that the Superintendent of Public Instruction must file with the county superintendent of schools a report containing the matters specified in the section before the county superintendent has the power to call an election. In that case

the report of the Superintendent of Public Instruction did not state the estimated results of operating a high school in the proposed district in terms of local tax rates and did not give the nature and probable cost of alternative methods of providing adequate high school educational opportunities for children in the proposed district, and we held that these omissions rendered the organization of the district a nullity. In that case it was further said in regard to this statute, that its general purpose is evidently to provide a means by which the voters of a proposed high school district would be furnished with information pertaining to the operation of a four-year high school in the proposed area, that the estimates of the cost of operation of a school, expressed in terms of local tax rates, and the other matters which the statute required to be included in the report of the Superintendent of Public Instruction, are of vital importance to a voter in determining whether he should vote for or against the organization of a district, and that the furnishing of such information to the voters is the essence of the act.

Appellants contend that when the Superintendent of Public Instruction estimated in his report that a 25-cent tax rate would be adequate for building purposes, he miscalculated and committed an error in his estimate of said tax to the extent of at least 5 cents, and that, since the purpose of the statutory provision requiring his report to include estimates of the cost of operating a high school expressed in terms of local tax rates was to provide a means by which the voters of a proposed high school district would be furnished with information pertaining to the operation of a four-year high school in the proposed area, therefore such erroneous estimate defeated the purpose of the statute as effectively as if the report had contained no estimate whatever of any tax rate. It is urged this error tended to misinform and mislead the voters on the matter of tax rates and that it is entirely reasonable to

suppose that many persons voted for the district believing from a reading of the report that a 25-cent tax rate for building purposes would be sufficient, whereas had they known that such tax rate would necessarily be a 30-cent rate, they would have voted against the proposition.

The report states: "It is estimated that a building costing at least One Hundred Twenty-five Thousand Dollars ($125,000.00) will be required if a gymnasium, farm shop and other seemingly necessary features are included. This would require a levy of approximately twenty-five cents (25c) for payment of bonds if they can be financed over a period of twenty (20) years with Five Thousand Dollars ($5,000.00) payable annually on principal, in addition to annual interest payments calculated at two and one-half per cent (2½%). It appears that the educational rate required should be eighty-five cents (85c) to one dollar ($1.00) depending upon whether the taxes of the district are collected in full." The report further states: "The equalized assessed valuation of the proposed district was approximately Two Million Six Hundred Fifty-one Thousand Four Hundred Eleven Dollars ($2,651,411.00) in 1944 and a ten-year average of the assessed valuation was Two Million Four Hundred Thirty-three Thousand Nine Hundred Sixty-nine Dollars ($2,433,969.00)."

The above excerpts from the report informed the voters that the Superintendent of Public Instruction estimated that the construction of a building costing $125,000 would be necessary to the operation of the school and that he estimated that a building tax levied at the rate of approximately 25 cents over a period of 20 years would be required to finance the construction of such building. The report also states the amount of the last equalized assessed valuation of the proposed district, and thus gives to the voters full and correct information from which they can determine the amount of taxes which any tax rate will produce.

It is obvious that a bond issue of $125,000 cannot be paid out in 20 years at the rate of $5000 payable annually on principal, and that interest at 2½ per cent upon $125,000 for one year amounts to $3125. It is equally obvious that a tax rate of 25 cents upon an assessed valuation of $2,651,411 will produce a tax levy of $6628.52, and that such amount is less than $8125, which is the total amount required for the first year's interest on a bond issue of $125,000 and a payment of $5000 on the principal.

It is a condition essential and precedent to the right of a county superintendent of schools to call an election to vote upon the organization of a proposed community high school district that there be filed with him a report of the Superintendent of Public Instruction containing a statement of the estimated results of operating a high school in terms of local tax rates. (*People ex rel. Shriver* v. *Frazier*, 386 Ill. 620.) The statute provides that the report must contain such an estimate, but the statute does not provide and it does not follow that if such estimate is not strictly accurate or if the Superintendent of Public Instruction in making the same miscalculates or commits an error of computation or uses poor judgment, the election and every subsequent step taken as a result thereof will be unauthorized and void. The construction of a school building, the issuing of bonds to finance the same, and the rate of the tax to be levied therefor are not matters that are decided at an election called to vote upon the organization of the district. We do not think that the error in computation of which appellants complain is sufficient to invalidate the election.

During the pendency of this appeal, the legislature passed an act, being House Bill No. 467 of the 65th General Assembly, entitled "An Act to validate the organization of certain community high school districts, the election of members of Board of Education thereof and proceedings had by such members." This act provided that

in all cases where the county superintendent of schools of any county had received a petition signed by 100 or more legal voters residing in any contiguous and compact territory having a population of not less than 1500 persons and an equalized valuation of not less than $1,000,000, which was proposed to be organized into a community high school district, and an election had been called for such purpose by the county superintendent of schools and a majority of the voters voted in favor of such organization, and where at a subsequent election similarly called and held, a board of education was selected by the voters, and such persons so acting as board members had met and organized as a board of education and functioned as such, each such election was declared legal and such territory declared legally and validly organized and established as a community high school district and a valid and existing school district and body politic and corporate of the State for the purpose of establishing and maintaining a high school, "notwithstanding the failure of certain officials to perform their duties in connection with the organization of any such community high school district in the manner required by law."

It is well settled that although the General Assembly cannot, by subsequent legislation, supply a lack of power existing in the first instance, or waive jurisdictional requirements, either constitutional or statutory, and thereby make void proceedings valid, it can, by curative act, heal irregularities and make valid that which is merely an illegal or defective exercise of an existing power. (*People ex rel. Rhodes* v. *Miller,* 392 Ill. 445; *People ex rel. Toman* v. *B. Mercil & Sons Plating Co.* 378 Ill. 142.) While the legislature could not, by curative law, dispense with the report of the Superintendent of Public Instruction as a condition precedent to the valid organization of a community high school district, or waive the statutory requirement that such report state ·the estimated results of the

operation of a high school in terms of local tax rates, it was within the power of the legislature, by curative law, to make legal and valid the organization of a community high school district when such estimate contained in the report of the Superintendent of Public Instruction was inaccurate.

It is also argued by appellants that because of the alleged increase in building costs during the interval between the date when the report was filed and the date when it was published, such report had become stale, and when published was misleading and deceiving to the voters in regard to the cost of constructing the building required by the district. The report was filed November 20, 1945, and published May 27, 1946. During the six-months' interval between these two dates, there was no substantial increase in building costs sufficient to justify this court in taking judicial notice thereof. Moreover, as the report was dated November 20, 1945, no voter could have been misled by any subsequent increase in building costs.

It is lastly asserted that the delay of six months and seven days intervening between the filing of the report and the calling of the election was unreasonable and rendered the election void.

Section 9 of article 10 of the School Code (Ill. Rev. Stat. 1945, chap. 122, par. 10-9,) provides that upon receipt of a petition signed by 100 or more voters residing in any contiguous and compact territory having a population of not less than 1500 persons and an equalized assessed valuation of not less than $1,000,000, and "after compliance with Section 10-13," the county superintendent of schools shall order an election to be held for the purpose of voting for or against the proposition to establish a community high school. Section 10-13, which must be complied with before the election is ordered, requires the Superintendent of Public Instruction to file with the county superintendent of schools a report concerning the proposed

high school district, and requires such report to be published at least ten days prior to the election at which the proposition for the establishment of the high school district is submitted. Ill. Rev. Stat. 1945, chap. 122, par. 10-13.

It is clear from the above sections of the School Code that when a proper report concerning a proposed community high school district is filed with the county superintendent of schools, he is required to call the election and has no discretion whether the election should be held or not. If the report is in conformity with the statute, it is his duty to publish the report, fix the time and place of holding the election and give the required notice thereof. No time is designated by the statute within which the election shall be called and held. The implication of law, therefore, is that it should be called and held within a reasonable period of time; and inasmuch as what is a reasonable time within which to hold the election depends upon the circumstances in each particular case, the county superintendent of schools is necessarily vested with a discretion in this regard. In the record here there is no showing as to what the circumstances were during the six-months' interval between the filing of the report and the calling of the election, and nothing to indicate that the delay of the county superintendent of schools in calling the election was not reasonable, prudent or necessary, or that he abused his discretion in fixing the date of the election; and, in the absence of such showing, we are not disposed to hold as a matter of law that his authority to call such election had lapsed because of delay in the exercise thereof.

The circuit court of Adams County was correct in finding the issues in favor of defendants, and the judgment of that court will be affirmed.

*Judgment affirmed.*