(No. 30788.—

THE PEOPLE *ex rel.* Ralph D. Boyington *et al.,* Appellees, *vs.* NORTHFIELD TOWNSHIP HIGH SCHOOL DISTRICT No. 225 *et al.,* Appellants.

*Opinion filed January 19, 1949—Rehearing denied March 15, 1949.*

RUGEN, LIGTENBERG & GOEBEL, of Chicago, for appellants.

WILLIAM J. TUOHY, State's Attorney, JOHN S. BOYLE, State's Attorney, on rehearing, and TENNY, SHERMAN, ROGERS & GUTHRIE, (GORDON B. NASH, GEORGE B. DUGGAN, JACOB L. SCHEER, S. ASHLEY GUTHRIE, and PAUL C. MATTHEWS, of counsel,) all of Chicago, for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

An action was filed in *quo warranto* in the circuit court of Cook County by the State's Attorney in the name of the People of the State of Illinois *ex rel.* Ralph D. Boyington and August Burmeister, taxpayers. The complaint consisted of two counts, the first charging that the Northfield Township High School District No. 225 in said county had, since April 12, 1947, unlawfully held and exercised the rights, powers, authority and franchises of a high school district over all that territory lying within the limits of Northfield Township No. 42, situated in said county. The second count alleged that the board of education of said high school district has unlawfully exercised corporate powers and authority in connection therewith. An answer was filed alleging that the high school district was properly organized and that the board of education was duly elected. The answer prayed that the complaint be dismissed and that an order be entered finding said township high school district No. 225 to be duly and legally organized and existing under the laws of the State of Illinois. Plaintiffs filed a reply alleging facts showing that during the course of the proceeding to organize defendant school district a petition to annex a part of Northfield Township to the New Trier High School District No. 203 was filed with the county

superintendent of schools pursuant to which an election was held and the annexation completed prior to the completion of proceedings to organize Northfield High School District No. 225. On these pleadings and a stipulation of facts the case was heard and on March 11, 1948, judgment was entered dismissing the complaint. On March 15, 1948, William W. Miller and Helen Robbins Miller filed a petition to vacate the judgment and for leave to intervene. On March 30 their petition was granted, the previous judgment of March 11 was vacated and intervenors were given permission to file an additional reply in which they alleged substantially the same facts as in the reply of plaintiffs except that intervenors alleged that the village of Northfield, during the course of all the disputed proceedings, had a population of more than 1000 and not exceeding 100,000, a majority of which resided in that part of the village which is in New Trier Township; that the entire village of Northfield is included for high school purposes in New Trier township and could not be legally included in Northfield Township High School District and that therefore the election and proceedings purporting to do so are void. An additional stipulation of facts was made and the case was heard on all the pleadings filed and additional stipulation of fact.

On May 4, 1948, judgment was entered finding that defendant Northfield Township High School District was a validly organized and existing district and that defendant members of the board of education constituted a lawful board of education as to all territory lying within Northfield Township except that portion of the village of Northfield which lies within Northfield Township; that the election held to annex the disputed territory to New Trier Township High School district was void and that the entire village of Northfield is in New Trier Township High School District by virtue of section 10-6 of the School Code of 1945. Ill. Rev. Stat. 1947, chap. 122, par. 10-6.

Defendants appeal from that part of the judgment which excepts the portion of the village of Northfield from the Northfield Township High School District and plaintiffs and intervenors join in cross appeal from that part of the judgment which holds that· Northfield Township High School District is a valid existing high school district as to the remainder of Northfield Township, and from that part which holds void the proceedings and election held to annex the disputed territory to New Trier Township High School District No. 203.

It is stipulated that the proceedings and election had to annex the disputed territory to the New Trier District were in all respects in conformance with the pertinent statute; that the proceedings and election had to organize Northfield Township High School District were in conformance with the pertinent statutes except as to the sufficiency of the report of the Superintendent of Public Instruction required by section 10-13 of the School Code; and that the village of Northfield, during and since December, 1946, had a population of not less than 1000 and not exceeding 100,000, and that a majority of its residents lived in New Trier Township and a minority in Northfield Township.

The principal propositions raised are, (1) whether the proceedings commenced December 15, 1946, to establish Northfield Township High School District took precedence over the proceedings of March 8, 1947, to annex the disputed territory to New Trier High School District No. 203, which precedence resulted in the invalidity of the later annexation proceedings, and (2) whether section 10-6 of the School Code is self-executing so as to automatically include all of the village of Northfield in the New Trier district.

The crucial question presented is whether, by virtue of section 10-6 of the School Code, all of the village of Northfield was automatically included in the New Trier district and excluded from the Northfield district.

Appellants contend that it was improper to permit intervention by the intervenors after judgment had been entered. The petition to vacate the judgment was filed within 30 days. Subparagraph 7 of section 50 of the Civil Practice Act provides that "The court * * * may within 30 days after entry thereof set aside any judgment or decree upon good cause shown by affidavit, upon such terms and conditions as shall be reasonable." (Ill. Rev. Stat. 1947, chap. 110, par. 174.) On the matters as shown by the petition the trial court properly exercised its discretionary powers to vacate the judgment.

Appellants further contend it was error to permit intervenors to intervene for the reason they had no right to bring a proceeding in *quo warranto*. The proceedings below were instituted by the State's Attorney in the name of the People on the relation of two individuals. Such a proceeding is public in nature and a petition to intervene calls upon the trial judge to exercise his discretion as to whether the issue presented by the petition is germane to the particular purpose of the proceeding. Here the petition questioned the very existence of the Northfield Township High School District and, in our judgment, was sufficient for the court to exercise his discretion. Section 25 of the Civil Practice Act provides, "Where a complete determination of the controversy cannot be had without the presence of other parties, the court may direct them to be brought in. Where a person, not a party, has an interest or title which the judgment may affect, the court, on application, shall direct him to be made a party." (Ill. Rev. Stat. 1947, chap. 110, par. 149.) This statute applies to *quo warranto* proceedings. *People ex rel. Sandberg* v. *Grabs,* 373 Ill. 423.

Cross appellants contend that the Northfield Township election, on which the organization of Northfield Township High School District was based, was invalid because the report of the Superintendent of Public Instruction, required by section 10-13 of the School Code, did not set forth the

information required by section 10-1 as a condition precedent to the holding of a valid election to establish a township high school district. Section 10-13 provides that the township treasurer, upon filing of a petition provided for in section 10-1, shall promptly transmit a notice of the petition to the Superintendent of Public Instruction who "shall within 90 days after receipt of notice of the petition prepare and file with the treasurer * * * a brief report concerning the proposed high school district. The report shall state * * * the nature and probable cost of alternative methods of providing adequate high school educational opportunities for children in the territory involved * * *." Cross appellants contend that the report furnished by the Superintendent of Public Instruction in the instant case failed to comply with the statute in that it did not set forth the information required as to probable costs of the alternative methods.

An examination of the record reveals that the report of the Superintendent of Public Instruction sets forth in considerable detail the probable cost of operating the proposed district. In it the first year's cost of operation is estimated at $125,000, with an educational tax rate of less than forty cents. It further contains an estimate of cost in the school years 1950-51 as likely to be $300,000, with an educational tax rate of about fifty-two cents. It estimates the cost of a suitable building and then discusses the requirement of handling the indebtedness and estimates the bond rate necessary to retire the bonds in twenty years. The report then lists three alternate methods by which adequate educational opportunities could be provided for children of the territory and states, "It is my opinion, therefore, that the alternative method above mentioned would probably cost the taxpayers as much or more money than the plan of educating the high school children of the proposed district in the proposed township high school * * *."

To support their contention that the report fails to meet the requirement of the statute, cross appellants cite the case of *People ex rel. Shriver* v. *Frazier,* 386 Ill. 620.

Cross appellants contend there is no statement of what the probable cost of any such alternative method is, hence the report does not comply with the statute, and that the ensuing election on the proposed establishment of the township high school is, therefore, void. They cite the case of *People ex rel. Shriver* v. *Frazier,* 386 Ill. 620, on the proposition that there must be full compliance with the statute. Aside from the difference in the existing facts, we find in *People ex rel Shriver* v. *Frazier,* 398 Ill. 386, cited by appellants in support of the proposition that there was full compliance, that the report there was attacked as being defective because of inaccuracies of the estimates made and that the court, in holding the report was sufficient under the statute, said: "The statute provides that the report must contain such an estimate, but the statute does not provide and it does not follow that if such estimate is not strictly accurate or if the Superintendent of Public Instruction in making the same miscalculates or commits an error of computation or uses poor judgment, the election and every subsequent step taken as a result thereof will be unauthorized and void." It is apparent that this case points the way to an interpretation of a complex statute pertaining to necessary details in the report of the Superintendent of Public Instruction in conformity with the requirements of the statute. As this court said in the other *Frazier case,* 386 Ill. 620, "The general purpose of such provision is evidently to provide a means by which the voters of a proposed high school district would be furnished with information pertaining to the operation of a four-year high school in the proposed area." The object of the estimates of cost, no matter how detailed, is to tell the voters whether the proposed plan will cost more or less than other possible

arrangements. In our judgment the report in this case does that. It is true the report does not state how much more the alternative plans might cost, but the figures adequately informed the voters what the proposed plan will cost and that it is cheaper than the other possible arrangements and, at the same time, more adequate. Such information seems to be sufficient to enable the voter to make a decision. In this case there was not a choice of plans given to the voters, but a choice of whether to vote for or against the one plan proposed. The report advised them that the least costly would be the plan proposed and on that basis the voters chose to accept it rather than reject it and continue under previous arrangements or initiate other proposals. An analysis reveals that the report in question and the election held thereafter are not invalid by reason of the contents of the report.

The next question presented is whether the township election to establish Northfield Township High School District No. 225 was invalid by reason of the prior election to detach the disputed territory from nonhigh school territory and annex it to New Trier Township High School District. A stipulation of facts as to this situation discloses that the petition to organize Northfield Township High School District was filed with the township treasurer on December 15, 1946. The petition to detach and annex the disputed territory to New Trier Township High School District was filed with the county superintendent of schools on March 8, 1947. An election was held in the disputed territory on the proposal to annex it to the New Trier district on March 29, 1947, in which the proposal carried. The election on the petition to organize Northfield Township High School District was held on April 12, 1947. The question is then presented as to the effect of these elections on the disputed territory. Appellants contend that the Northfield petition, having been filed first, required that all other petitions with reference to territory within the

township be held in abeyance until the proposal first filed was disposed of. We find no case in this respect with parallel facts as they exist here. This contention must be considered in the light of the various provisions of the School Code taken in connection with the factual situation as disclosed by the record. The two proceedings and the elections held pursuant thereto were each commenced and held under different provisions of the School Code and necessitate consideration in connection with the provisions of section 10-6.

Under the existing circumstances, it is necessary, first, to consider the effect of section 10-6 of the School Code. Cross appellants contend that the section is self-executing and that therefore the entire village of Northfield is automatically for school purposes a part of New Trier Township, and that by reason thereof is excluded from Northfield Township High School District No. 225. Section 10-6 provides, "When any city having a population of not less than one thousand and not exceeding one hundred thousand inhabitants lies within two or more townships, that township in which a majority of the inhabitants of the city reside shall, with the city, constitute a school township for high school purposes."

An examination of the School Code in its entirety reveals that the General Assembly has consistently provided for ordinary effective action on the part of those concerned in cases where school districts are organized, enlarged or diminished. We do not find anywhere in the code evidence of an intention on the part of the General Assembly to create or enlarge any school district without some formal effective action. To hold that section 10-6 is self-executing is contrary to the generally expressed requirement that affirmative action must be taken in the creation, change or enlargement of school districts. Under certain circumstances such holding might render tax levies void wherein there was a shift in population. Many other inconsistencies

might be pointed out if this section were held to operate without affirmative action. The cases of *People ex rel. Lord* v. *Bruennemer,* 168 Ill. 482, and *Trustees of Schools* v. *People ex rel. Updike,* 161 Ill. 146, cited by cross appellants to sustain their contention, are easily differentiated and do not decide the question.

We find, however, that although section 10-6 is not self-executing, its language clearly expresses an intention on the part of the General Assembly to prevent the dissection of communities by congressional township lines with the resulting inconvenience and destruction of community interest in schools. It is logical that the children of an incorporated community be allowed to attend school together. The reasons for the operation of this section and the clear terms of its language are just as applicable to the situation described when, as here, a portion of an incorporated community has not, for some reason, been included in the district wherein a majority of its inhabitants reside. The omission to take the necessary affirmative action to include all of such a community in the same district does not destroy the right of those left out to join the majority. The right lies dormant until exercised and the provision of the statute serves notice on all concerned that the right exists and may be exercised by those who find themselves within its terms. A casual reading of the statute would apprise the proponents of the Northfield district that the portion of the village of Northfield which lies within Northfield Township had the right to join the majority of the village in the New Trier district at any time upon appropriate affirmative action. Being excluded from the New Trier district, the territory within the village limits remained nonhigh school territory, but by virtue of its situation as a part of the village, and by the terms of section 10-6 of the School Code, it was endowed with the special right to be included with the rest of the village by affirmative action.

That being so, it was included in the proceedings to organize the Northfield district subject to its decision to join the New Trier district.

It is urged that section 10-6 does not apply for the reason the disputed territory comprises part of a village, while the statute expressly uses the word "city." We find no showing that the incorporation of the village of Northfield as a city would alter the force of the reasons for the enactment of this section. This court, in *People ex rel. Hatfield* v. *Grover*, 258 Ill. 124, had before it a similar question and held that the word "city" must be held to include incorporated towns or villages of the population specified; and in the case of *Village of Depue* v. *Banschbach*, 273 Ill. 574, the court referred to the *Grover case* with approval and pointed out, in determining what was intended, that it was frequently necessary to refer to the context of the act and the objects and purposes for which it was passed. The village of Northfield being within the prescribed limits of population, section 10-6 of the School Code must be held to apply to it with equal force as if it had been incorporated as a city. See, also, *People* v. *City of Chicago*, 349 Ill. 304, p. 325.

In view of what we have above pointed out, that part of the village which lies within Northfield Township was clothed with the right, at any time, to effectuate the provisions of section 10-6 by affirmative action. It does not appear the statute makes specific procedure for annexation of territory encompassed by section 10-6, however, we are of the opinion the procedure was sufficient in this case to annex the territory lying within the village of Northfield.

As to the contention of the parties that the petition as first filed must control, citing the cases of *People ex rel. Mills* v. *Fairfield Community High School Dist.* 397 Ill. 233, and *People ex rel. Simpson* v. *Funkhouser*, 385 Ill. 396, we find there factual situations entirely different from

the instant case. We further find in those cases that section 10-6 was not an element to be considered. The annexation proceedings were conducted before the county superintendent of schools before whom no conflicting proceedings were pending and there was nothing in the record which required him to exercise discretion as pointed out in the *Fairfield* and *Funkhouser cases*. Since the proceedings to establish the Northfield Township High School District were undertaken and carried out under the conditions imposed by section 10-6, they are not invalidated by the fulfillment of that condition during those proceedings. There being no showing that the results of the Northfield district elections were affected by the action with reference to the disputed territory, there is no ground shown here on which the Northfield district and its board of education must be invalidated as to Northfield Township less the part of the village which lies within its boundaries.

In view of what we have heretofore pointed out, the judgment below is affirmed as to that part which holds valid the proceedings and election to establish Northfield Township High School District No. 225, with its board of education, except as to that part of the village of Northfield which lies within the boundaries of Northfield Township No. 42. The judgment as to that part which holds void the proceedings and election to annex that part of the village of Northfield, situated and lying within Northfield Township, to New Trier Township High School District No. 203, and as to that part which purports to hold the provisions of section 10-6 of the school Code to be self-executing is reversed, and the cause is remanded, with directions to enter a judgment holding valid the proceedings of annexation as to the territory lying within the limits of the village of Northfield, which, as we have heretofore pointed out, are valid.

*Affirmed in part and reversed in part*
*and remanded, with directions.*