(No. 32142.—

THE PEOPLE *ex rel.* Michael A. Shore, State's Attorney, Appellant, *vs.* WILLIAM HELMER *et al.*—(ELMER H. LUTHY, Appellant, *vs.* WILLIAM HELMER *et al.*, Appellees.)

*Opinion filed November 27, 1951.*

MICHAEL A. SHORE, State's Attorney, and THEODORE B. DURFEE, both of Peoria, for appellants.

EUGENE LEITER, of Peoria, for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is a *quo warranto* proceeding, challenging the legal existence of Community High School District No. 310 of Peoria County, and calling upon appellees to show by what warrant they hold and exercise the power of members of the board of education of said school district. Contemporaneously with the *quo warranto* proceeding a complaint was filed praying for an injunction restraining appellees from constructing a school building and from issuing and selling bonds and levying taxes in said school district. The two cases were consolidated in the trial court and will be considered together on this appeal. Appropriate answers were filed in each case, and a stipulation of facts was entered into by the parties. After considering the issues thus presented, the trial court entered judgment in the *quo warranto* suit confirming the legal existence of the community high school district, and the election of appellees as members of the board of education. The injunction was denied. A franchise being involved, a direct appeal has been perfected to this court.

On February 5, 1949, an election was held upon the question of establishing a community high school district for the territory described in the recommendation of the school survey committee for Peoria County. A majority of the votes cast in the territory, as a whole, was in favor of the establishment of the community high school district. Thereafter, appellees were elected as members of the board of education. An election was held on proposals to pur-

chase a schoolhouse site, construct a school building, and issue school building bonds. All of the propositions submitted at this election received a majority of the votes cast. Thereafter the board of education passed a resolution authorizing the issuance of the school building bonds and purchased a school site upon which to construct a new community high school building. Appellants seek to enjoin the further action of the board of education, in connection with the construction and financing of the new school building. Hence, the two suits challenging the legality of the formation of the school district.

The steps taken to form Community High School District No. 310 are fully set out in the pleadings and stipulation of facts. The uncontroverted facts show that a school survey committee was properly organized in Peoria County, and that within the time prescribed by the School Survey Act the committee filed its report with the superintendent of schools of Peoria County, recommending the establishment of a community high school district composed of certain described territory. On the same day a petition was filed with the county superintendent of schools of Peoria County, in compliance with section 10-9 of the School Code, (Ill. Rev. Stat. 1949, chap. 122, par. 10-9,) praying for the organization of a community high school district, comprising the same territory as that described in the recommendations of the school survey committee. It was stipulated that the territory sought to be formed into the new community high school district met the requirements of the School Code necessary to form such a school district. It was also agreed that the required notices for the calling of the election of February 5, 1949, were duly given by the county superintendent of schools, and that the proposition to establish said school district received a majority of the votes cast throughout the district.

It is contended that the election to form Community High School District No. 310 was invalid under the School

Survey Act because separate voting precincts were not established, as required by the act, in two villages located in the territory, so that it could be determined whether a majority of the votes cast inside the corporate limits of the respective villages were for or against the proposition to form the school district.

Section 13 of the School Survey Act (Ill. Rev. Stat. 1949, chap. 122, par. 725,) provides that upon the recommendation of the school survey committee the question of establishing a school district shall be submitted to the legal voters residing in the territory affected, at an election to be called by the county superintendent of schools within nine months after the filing of the final report of the committee; such election is directed to be called and held, notice thereof given, and the question submitted, and the vote canvassed in accordance with the provisions of the School Code, except that the filing of a petition is not required and the entire area of the territory votes as a unit, with the proviso that if any village having a population of 500 inhabitants or more is located within such territory, then one or more voting precincts shall be established wholly within the corporate limits of such village, and one or more voting precincts shall be established within that part of the territory lying outside of the corporate limits of such village, and the proposition to establish such a school district shall not be deemed to have received a majority of the votes cast on the proposition, or to carry, unless a majority of the votes cast within the corporate limits and a majority of the votes cast in the territory outside the corporate limits, the count to be taken separately, each are in favor of establishing said school district. The agreed facts show that a polling place was established in each of the two villages having more than 500 inhabitants, which were located in the territory, but separate voting precincts were not set up wholly within the corporate limits of the two villages, as provided in the School Survey Act. The

voting in the territory took place as a unit, and a majority of the total votes cast in the entire area of the territory was taken as the determining factor in declaring that the proposition to establish the school district had carried.

An election under the School Survey Act is required to be called and conducted in accordance with the provisions of the School Code applicable to an election on a similar or like proposal. Section 10-9 of the School Code provides for the calling of an election by the county superintendent of schools for the purpose of voting for or against the proposition of establishing a community high school by publishing a notice at least ten days prior to the date of the election at least in one or more newspapers published in the district, or, if no newspaper is published therein, then in one or more newspapers having a general circulation within the district. The county superintendent of schools is required to establish one or more polling places within the territory described in the petition, and to appoint judges and provide ballots as designated in the statute. It is agreed that all of these requirements were fulfilled by the county superintendent of schools.

Appellants further contend that the election to form the school district in question was invalid under the provisions of the School Code because the county superintendent of schools had no authority to call an election under that act without first giving the required notice to the State Superintendent of Public Instruction, and then publishing the report and recommendations of that officer in compliance with the School Code. Section 10-13 of the School Code (Ill. Rev. Stat. 1949, chap. 122, par. 10-13,) requires that when a petition for the organization of a community high school district has been filed with the county superintendent, notice shall be given the Superintendent of Public Instruction, who shall study the proposition and file a report of his recommendations, a copy of which shall be published in a newspaper of general circulation, in the

territory involved, at least ten days prior to the election at which the proposition for the establishment of the high school district is submitted. Compliance with this provision is mandatory before a valid election for the formation of a school district can be held under the School Code. (*People ex rel. Shriver* v. *Frazier,* 398 Ill. 386.) It is agreed that the county superintendent of schools did not comply with this provision of the School Code before calling the election.

Stated in simple terms the theory of appellants is that the school district in question has not been formed in compliance with the required procedure set out in the School Survey Act, because separate voting precincts were not set up in the two villages located in the territory; that the school district has not been formed as provided in the School Code because the county superintendent of schools had no authority to call an election under the School Code without first giving the required notice to the Superintendent of Public Instruction, and having his report and recommendations published as required by the School Code; and that the school district cannot have any legal existence unless it has been formed pursuant to an election called, held and conducted in strict compliance with either one ·or the other of the methods provided by the legislature for such purpose.

In reply to these contentions, appellees rely upon a validating act passed by the General Assembly on May 18, 1951, in force, July 1, 1951, (Ill. Rev. Stat. 1951, chap. 122, par. 733.) The validating act provides that where a legally created school survey committee has, within the time prescribed, filed a final report recommending the establishment of a school district; where the question of establishing a community high school district as recommended by the committee has been submitted to the legal voters of the territory affected at an election called by the county superintendent of schools within nine months after the final report was filed; where the question was sub-

mitted, and the vote canvassed substantially in accordance with the provisions of the School Code; where, in addition to the proceedings of the survey committee, a petition in compliance with section 10-9 of the School Code had also been filed with the county superintendent of schools; where one or more voting precincts was established within the territory and an election held in compliance with section 10-9 of the School Code, but where no notice of the petition had been transmitted to the Superintendent of Public Instruction, no report made by him, and no publication made of the statement of the Superintendent of Public Instruction in compliance with section 10-13 of the School Code; where the proposition to establish a community high school district received a majority of the votes cast on the proposition within such territory, and where, at a subsequent election called and held, a board of education had been chosen for such district, each such election is made legal and valid and such district is declared legally and validly organized and established as a school district for the purpose of maintaining a school district in accordance with the recommendations of a school survey committee, and in accordance with the School Code of Illinois.

The effect of the validating act is to legalize the organization of a school district which has been formed as a result of an election called and held as provided in the School Code, without regard to whether or not separate voting precincts had been provided in villages located in the territory, as well as in the territory outside the corporate boundaries of such villages, or without regard to whether or not notice had been given to the Superintendent of Public Instruction and his report published in the territory comprising the proposed district. In other words, the validating act waived the requirement of the School Survey Act that, in an election held for the purpose of creating a community high school district, separate voting precincts

shall be established within and without the corporate limits of any village having more than the designated number of inhabitants, located in the territory. It also waived the requirements of the School Code that notice be given to the State Superintendent of Public Instruction, and his report and recommendations be published as a condition precedent to the calling of an election to form a community high school district. The ultimate question thus presented is whether or not the legislature had power to validate the formation of the school district by waiving these requirements of the School Survey Act and the School Code, where neither of such acts was fully complied with in the formation of the school district in question.

The test in all cases of a validating act is whether the General Assembly might have authorized the act which it attempts to validate before it took place. (*People ex rel. Pillsbury* v. *Edvander,* 304 Ill. 400.) Section 1 of article VIII of the constitution of this State requires the General Assembly to provide a thorough and efficient system of free schools whereby all children of this State may receive a good common-school education. This provision has been construed as authorizing school districts by direct legislative act without any vote upon the question. (*People ex rel. Reich* v. *McCoy,* 387 Ill. 288.) Having the power to authorize the organization of the district in question without requiring any petition or election whatever by the people, and having also the power to designate the manner of election of the members of the board of education, it also had the power to validate the school district and the election of the board of education, where the elections were called, held and conducted in the manner shown by the undisputed facts in this case. The General Assembly has provided in the School Code that an election to form a community high school district may be called, held, and conducted with one or more polling places within the territory sought to be formed into the district. No provision

of the School Code requires that separate voting precincts be established within and without the corporate limits of any village located in the territory proposed to be formed into the school district. It cannot be seriously contended, therefore, that the General Assembly had no power to form such a school district by an election in which the total area of the territory voted as one unit. While the General Assembly cannot, by curative legislation, supply the lack of power existing in the first instance, or waive jurisdictional requirements, either constitutional or statutory, and thereby make void proceedings valid, it can, by curative act, heal irregularities and make valid that which is merely an illegal or defective exercise of an existing power. (*People ex rel. Shriver* v. *Frazier,* 398 Ill. 386.) The legislature had power to form a school district within the territory described by the school survey committee without requiring that separate precincts be set up within and without the corporate limits of villages having more than 500 inhabitants. All of the requirements of the School Code, having to do with the giving of notice, establishment of polling places, appointment of judges, conducting the election, and declaring the results thereof, were substantially complied with by the county superintendent of schools. Since the General Assembly had power to form a community high school district by an election held in the manner in which the election in the instant case was held, the validating act did have the effect to validate the district in question and the election of appellants.

The judgment and decree of the circuit court of Peoria County dismissing the complaint in the *quo warranto* proceeding, and denying the injunction, are accordingly affirmed.

*Judgment and decree affirmed.*