COMMUNITY CONSOLIDATED SCHOOL DISTRICT No. 210, LA SALLE COUNTY *et al.,* Plaintiffs-Appellants and Cross-Appellees, *v.* JOE L. MINI, COUNTY SUPERINTENDENT OF SCHOOLS OF LA SALLE COUNTY, *et al.,* Defendants-Appellees and Cross-Appellants.

(No. 72-52;

Third District—June 8, 1972.

808

Jack Trager, of Ottawa, for appellants.

Hupp and Irion, of Ottawa, (Frederick Irion, of counsel,) for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

On October 18, 1968, a petition was filed in the office of Joe L. Mini, County Superintendent of Schools of La Salle County, hereinafter referred to as the Superintendent, requesting that an election be called for the purpose of voting for or against the establishment of a community unit district embracing certain territory described in the petition. The petition first came on for hearing before the Superintendent on March 3, 1969, at which time written objections were filed in the proceedings by a number of the residents and several boards of education. During the course of the hearing held before the Superintendent it was stipulated between the parties that the population in the proposed unit district was not less than 1750 but was less than 4000. On April 14, 1969, the Superintendent found that the population in the proposed district was as stipulated and further stated in a written order as follows:

"I further find that in light of the decision I am making, that additional action will be required by the Department of Public Instruction of the State of Illinois as provided for in Sec. 11—6 of Chapt. 122 of the Illinois Revised Statutes of the State of Illinois."

Subsequently on the same date the Superintendent entered the following order:

"It is hereby ordered that the petition filed in the office of the Super-

intendent of Schools, La Salle County, Illinois, on the 18th day of October, 1968, be granted and that an election be called for the purpose of voting for or against the establishment of a community unit school district within the territory described in said petition."

On May 16, 1969, a petition for administrative review of this order was filed by the various objectors, hereinafter referred to as plaintiffs, in the circuit court of La Salle County. On May 26, 1969, the Superintendent filed his answer to the petition. On May 4, 1970, an amendment to the complaint for administrative review was filed by the plaintiffs attacking the constitutionality of Section 11—6, Chapter 122 of the Illinois Revised Statutes on the ground that the section violated provisions of Section 1 of the Fourteenth Amendment of the Constitution of the United States and Sections 2 and 19 of Article II and Section 1 of Article VIII of the Constitution of the State of Illinois.

On May 4, 1970, the Superintendent had filed in the proceedings a report of the Superintendent of Public Instruction of the State of Illinois. This report by order of court was later stricken and physically removed from the file of the proceedings. After hearing the circuit court of La Salle County overruled all of the plaintiffs' contentions including those directed to the constitutionality of Section 11—6 of the School Code and entered an order confirming the decision of the Superintendent which authorized an election as prayed for in the original petition.

After the filing of several post-hearing motions by the parties the plaintiffs elected to prosecute this appeal based solely on the constitutional questions involved. A cross appeal was filed but the controlling issue presented to this court is whether Section 11—6 of Chapter 122 of the 1967 Illinois Revised Statutes meets the requisite constitutional requirements.

The plaintiffs question the constitutionality of that portion of the School Code which they refer to as the "special procedure" portion pertaining to the organization of community unit school districts having less than 2,000 population. The specific portion of the 1967 statute with which we are concerned reads as follows:

"* * * [A]ny contiguous and compact territory, no part of which is included within any community unit school district, having a population of not less than 1500 and not more than 500,000 persons and an equalized assessed valuation of not less than $10,000,000 may be organized into a community unit school district as provided in this Article, if the special procedure later set forth in this Section for a district below 2000 population is followed by the Superintendent of Public Instruction and the County Superintendent of Schools of the county in which the territory or the greater part thereof is situated.

\* \* \* However, prior to calling any such election for organizing any such proposed district that does not have 2000 or more population, the County Superintendent of Schools shall transmit to the Superintendent of Public Instruction a notice of the petition whereupon the Superintendent of Public Instruction shall prepare the notification or report indicating whether or not he deems it possible for the proposed district to provide a recognized school program for a 12 grade district under conditions set forth in that Section. The County Superintendent shall cause a copy of such report to be published as provided in that Section." Chap. 122, Sec. 11—6, Ill. Rev. Stat.

It is the plaintiffs' contention that this "special procedure" portion of the statute is so vague, indefinite, uncertain and incomplete so as to be unconstitutional and void.

In order to determine the issue presented by this appeal it is necessary for us to acquaint ourselves with a brief history of certain portions of the School Code. Prior to 1941 there were no provisions in the code containing any requirements for the submission by the County Superintendent of Schools of a notice of the filing of a petition to the Superintendent of Public Instruction, nor were there any requirements regarding the report of the Superintendent of Public Instruction. In 1941 the legislature amended the School Code by adding Section 89c, and that section contained essentially the same provisions as were later to be found in Section 10—13 and finally in Section 12—4 of the School Code. Those sections contained all the standards and guide lines to be followed by the Superintendent of Public Instruction and the County Superintendent of Schools in connection with the petitions for the establishment of community high school districts and community unit school districts. Chapter 122, Section 12—4 of the 1963 Illinois Revised Statutes provided as follows:

"Par. 12—4. *Superintendent of Public Instruction—Determination of compactness and contiguity—Report for information of voters.* When a petition for the organization of a community high school district has been filed with a county superintendent of schools, in accordance with the provisions of this Act, such county superintendent shall promptly transmit a notice of the petition to the Superintendent of Public Instruction. Upon receipt of the notice, the Superintendent of Public Instruction shall, in cooperation with the superintendent of schools of the county or counties in which the territory of the proposed district is located, study the territory of the proposed district and the high school needs and conditions thereof and the area within and adjacent thereto.

If the Superintendent of Public Instruction finds, in the case of a petition filed under Section 12—1, that the territory included in the proposed district is not compact and contiguous, he shall so notify the county superintendent of schools within ninety days after receipt of the notice of the petition, giving a brief statement of the reasons for his decision. The county superintendent of schools shall thereupon cause a copy of the notice and statement to be published in a newspaper of general circulation in the territory of the proposed district and no election shall be held or further proceedings had on the proposal to establish such high school district.

In the case of petitions filed under Section 12—1, where the Superintendent of Public Instruction finds the territory involved to be compact and contiguous the Superintendent of Public Instruction shall within 90 days after receipt of notice of the petition prepare and file with the county superintendent of schools a brief report concerning the proposed high school district. The report shall state whether or not the Superintendent of Public Instruction deems it possible for the proposed district to provide a recognized 4 year high school program at reasonable cost, the conditions under which such operation would be possible, the estimated results of such operation in terms of local tax rates, the nature and probable cost of alternative methods of providing adequate high school educational opportunities for children in the territory involved and such other information as the Superintendent of Public Instruction believes may be helpful to the voters in such territory in voting on the proposition to establish a high school district. The county superintendent shall cause a copy of such report to be published in a newspaper of general circulation in the territory involved at least 10 days prior to the election at which the proposition for the establishment of the high school district is submitted."

We must note that prior to 1967 the "special procedure" portion of the School Code relating to the establishment of a community unit district provided as follows:

"However, prior to calling any such election for organizing any such proposed district that does not have 2000 or more population, the County Superintendent of Schools shall transmit to the Superintendent of Public Instruction a Notice of the Petition in the manner provided in Sec. 12—4 for the organization of a Community High School District, whereupon, the Superintendent of Public Instruction shall prepare the notification or report required by said Section 12—4 indicating whether or not he deems it possible for the proposed district to provide a recognized school program for a 12 grade district under condi-

tions set forth in said Section. The County Superintendent shall cause a copy of such Report to be published as in said Section provided." Chap. 122, Sec. 11—6, Ill. Rev. Stat. 1965.

Prior to 1965 there could be no question concerning the availability of standards and guide lines regarding the duties of the Superintendent of Public Instruction when he was notified by the County Superintendent of Schools that a petition had been filed requesting that an election be held for the purpose of voting for or against the organization of a community unit district. Chapter 122, Section 11—6 in the "special procedure" portion provided that the County Superintendent of Schools shall transmit to the Superintendent of Public Instruction a notice of the petition in the manner provided in Section 12—4. Section 12—4, which we have set forth in full, provided clear and explicit guidelines which were to be followed by the Superintendent of Public Instruction upon receipt of the notice.

The petition in the instant case was filed on October 18, 1968, and thus must be governed by the provisions of the 1967 School Code. Between the years of 1963 and 1967 the legislature made two subsequent changes in the code which directly affect the issues presented to us in this appeal. First, on March 29, 1967, Section 12—4 of Chapter 122, Illinois Revised Statutes, was repealed in its entirety and the standards and guidelines set forth therein were not incorporated in any other section or provision of the code. Secondly, in 1967 Section 11—6 of Chapter 122, Illinois Revised Statutes, was amended by deleting the words "in the manner provided in Section 12—4." As amended this section then provided that the Superintendent of Public Instruction shall prepare a report indicating whether or not he deems it possible for the proposed district to provide a recognized school *under conditions set forth in that section,* and that the County Superintendent of Schools shall cause a copy of such report to be published *as provided in that section.*

We have reviewed in detail the legislative history of these pertinent provisions of our School Code to illustrate that where we once had clear, precise sections, each synchronized with and supporting the other, by the year 1968 when the instant action was commenced this clarity and precision was no longer existent.

■■ The Superintendent and the other defendant appellees in this cause contend that no ambiguity exists that would render the "special procedure" portion of the statute invalid. We do not agree with the contention that there is no ambiguity, for the wording of the statute as amended in 1967 leaves much to conjecture and speculation when one attempts to interpret it. The Superintendent and defendant-appellees rightly state that the courts have long laid upon themselves the re-

sponsibility of endeavoring to give effect and vitality to a statute. (*Pliakos v. Illinois Liquor Control Commission,* 11 Ill.2d 456, 143 N.E.2d 47; *People v. Nastasio,* 19 Ill.2d 524, 168 N.E.2d 728; *People v. Deatherage,* 401 Ill. 25, 81 N.E.2d 581.) Also, the same parties urge that the primary purpose of statutory construction is to ascertain the legislative intention and in seeking the intent of the legislature courts should consider not only the language used, but also the end to be obtained, and in support of this contention cite the cases of *People v. Anderson,* 398 Ill. 480, 76 N.E.2d 773; *Inter-State Water Co. v. City of Danville,* 379 Ill. 41, 39 N.E.2d 356; *Schoellkopf v. DeVry,* 366 Ill. 39, 7 N.E.2d 757. With the principles set forth in these cases we do not disagree, however, in the instant case the hurdle which we would have to surmount in order to hold the "special procedure" portion of Section 11—6 constitutional is too great when we attempt to define that section as it regards the organization of unit districts having a population of less than 2000. In referring to the duties of the Superintendent of Public Instruction the statute says that he will prepare a report under conditions *set forth in that section* and the County Superintendent of Schools shall cause a copy of such report to be published as *provided in that section.* We can only ask, what section? No matter how much we may desire to give vitality and effect to a statute as well as to see that the recognized purpose of the statute is fulfilled, we are unable to do so in the instant case since we can only surmise, speculate and engage in pure conjecture if we attempted to find or establish guidelines, since the statute in question is vague, uncertain and greatly lacking in clarity. There is no answer provided in this statute to such questions as, "When does the County Superintendent of Schools transmit to the Superintendent of Public Instruction the notice of petition?", or, "When would the public official prepare the notification or report?", or, "What information is required in the report and what guidelines will he use in arriving at his decision as to whether such a district is possible, impossible, feasible or unfeasible?" We are also confronted with a statute which says that the County Superintendent shall cause a copy of the Superintendent of Public Instruction's report to be published but it fails to say when, how, where and how many times. The defects in this statute are insurmountable and this court cannot cure constitutional defects in a statute either by judicial amendment or construction, however beneficial the statute may be. (See *Boshuizen v. Thompson & Taylor Co.,* 360 Ill. 160, 195 N.E. 625.) It was in the case of *Boshuizen* that a portion of the Occupational Diseases Act was held void for uncertainty and violative of due process of law in that its provisions were found to be so vague, indefinite, uncertain, and incomplete so that no sufficiently clear and intelligible standard of duty was defined

so as to guide employers in complying with its requirements. Our Supreme Court in that case further stated:

"The legislature cannot constitutionally vest in the discretion of an administrative body the power to determine standards of duties not definitely found within the legislative act itself."

The same principle of law as set forth in *Boshuizen* applies in the case now before us. The provisions of the "special procedure" portion of Section 11—6 are so vague, indefinite, uncertain and incomplete that the County Superintendent of Schools and the Superintendent of Public Instruction cannot carry out the duties imposed upon them and the legislature cannot constitutionally vest these officers with the power to determine the standards of duty which they are to follow and which is not in the act itself; nor can this court cure the defect by judicial amendment or construction. See also *Parks v. Libby-Owens-Ford Glass Co.*, 360 Ill. 130, 195 N.E. 616; *People ex rel Duffy v. Hurley*, 402 Ill. 562, 85 N.E.2d 26; *Krebs v. Thompson*, 387 Ill. 471, 56 N.E.2d 761.

The trial court in overruling the plaintiffs' arguments that the special procedure portion of Section 11—6 of Chapter 122, Illinois Revised Statutes was unconstitutional issued a letter of opinion in which it was stated that the Superintendent of Public Instruction had a role of only helping and advising the County Superintendent of Schools, and that the state official's role did not in any way provide a basis for nullifying the County Superintendent's duty and right to call an election for the purpose of voting for or against the establishment of a community unit school district. We believe that the trial court's opinion and ruling was in error for all the guidelines and standards to be followed by the Superintendent of Public Instruction and the County Superintendent of Schools were previously contained in the School Code and were at various times known as Section 89c, Section 10—13, and finally Section 12—4. These sections of the School Code were construed by reviewing courts in four cases involving the formation of community high school districts and such construction is likewise applicable to the formation of community unit school districts. The first of these four cases is *People v. Frazier*, 386 Ill. 620, 55 N.E.2d 159, which arose from a *quo warranto* action attacking the validity of a community high school district. In this case our Supreme Court stated:

"There is nothing in the Act [Sec. 89c] which evidences an intent of the General Assembly that compliance with section 89c shall be anything less than full compliance. This means that the Superintendent of Public Instruction shall file a report with the County Superintendent of Schools which contains the matters specified in Section

89c. A construction of the statute which would permit anything less than full compliance would open the door to question what should be included and what might be omitted. These deductions lead to the conclusion that requirements of 89c are mandatory and must be complied with before the County Superintendent of Schools has the power to call an election."

The same sections were construed in the case of *People v. Frazier*, 398 Ill. 386, 76 N.E.2d 38; *People v. Northfield Tp. High School Dist. No. 225*, 402 Ill. 435, 84 N.E.2d 553; and *People v. Helmer*, 410 Ill. 420, 102 N.E.2d 96. The principles of law set forth by our Supreme Court in the first *Frazier* case were all affirmed in these subsequent cases. In the light of these opinions we cannot concur in the trial court's finding that the role of the Superintendent of Public Instruction is advisory only and that the County Superintendent of Schools has the right and duty to call an election independent of and regardless of any action taken on the part of the Superintendent of Public Instruction.

It is fruitless to argue that guidelines are present in the "special procedure" portion of Section 11—6 for when Section 12—4 of the School Code was repealed by the legislature in 1965 they were most effectively eliminated and the subsequent amending of Section 11—6 by referring to "conditions set forth or provided for in that section" only served to insert in the statute words which are meaningless. It may well be that the legislature was referring to the guidelines which had previously been set forth in the repealed Section 12—4 but if this was the intent of our legislature, such contention cannot prevail for such a practice serves only to make the statute unconstitutional. See *Hollingsworth v. Chicago & C. Coal Co.*, 243 Ill. 98, 90 N.E. 276.

■■ We are aware of the fact that the School Code and various sections of it have previously been attacked on constitutional grounds and that these attacks have failed, however, such previous opinions by our reviewing courts do not preclude a successful attack when made upon different grounds. See *Grasse v. Dealer's Transport Co.*, 412 Ill. 179, 106 N.E.2d 124; *Schuman v. Chicago Transit Authority*, 407 Ill. 313, 95 N.E.2d 447; *City of Chicago v. Cuda*, 403 Ill. 381, 86 N.E.2d 192; *Park v. Libby-Owens-Ford Glass Co.*, supra; *Boshuizen v. Thompson & Taylor Co.*, supra; *People v. Bruner*, 343 Ill. 146, 175 N.E. 400.

■■ For the reasons herein set forth we hold that portion of Section 11—6 of Chapter 122, Illinois Revised Statutes, referred to as "special procedure" portion of our School Code, which provides for the organization of community unit school districts having a population of less than 2,000 is unconstitutional and the decision of the trial court of La Salle

County is reversed and this case is remanded with instructions to that court to reverse the decision of the County Superintendent of Schools of said county and to further dismiss the petition which was filed by the defendant-appellees in this cause.

Reversed and remanded.

STOUDER, P. J., and ALLOY, J., concur.