(No. 27638.—

THE PEOPLE *ex rel.* George Edgar Simpson *et al.,* Appel-
lants, *vs.* WILLIS FUNKHOUSER *et al.,* Appellees.

*Opinion filed January 20, 1944.*

Virgil W. Mills, State's Attorney, (Clarence Umfleet, of counsel,) both of Fairfield, for appellants.

Burgess, Loy & Burgess, of Fairfield, and C. S. Conger, of Carmi, for appellees.

Mr. Justice Wilson delivered the opinion of the court:

January 2, 1941, a petition signed by more than fifty legal voters residing in non-high school territory, located in Wayne, White and Hamilton counties, was filed in the office of the county superintendent of schools of Wayne

county, requesting the superintendent to order an election for the purpose of voting for or against the proposition to establish a community high school within the territory described, pursuant to section 89a of the act to establish and maintain a system of free schools. (Ill. Rev. Stat. 1939, chap. 122, par. 97.) The county superintendent ordered an election to be held on January 18, 1941. A majority of 330 votes favored the organization of Community High School District No. 229, commonly known as Burnt Prairie Community High School District. Thereafter, an election called by the county superintendent resulted in the election of Willis Funkhouser, Charles Stahl, Floyd Pollard, Henry Taylor and Elvis Blackford as its directors. In the meantime, on January 17, 1941, a petition for the detachment of territory from the non-high school territory of Wayne county and its annexation to Fairfield Community High School District No. 225, was filed with the county superintendent of schools of Wayne county. This petition was signed by a majority of the legal voters of the territory in controversy and, also, by a majority of the legal voters within the Fairfield district. The same day, January 17, 1941, the county superintendent filed in the office of the county clerk of Wayne county, a map of the territory described in the petition, conformably to section 96a of the School Law. Ill. Rev. Stat. 1939, chap. 122, par. 104a.

July 13, 1942, the People of the State, upon the relation of the State's Attorney of Wayne county, C. W. Musgraves and George E. Simpson, filed a complaint or information in the nature of *quo warranto* against the defendants, Funkhouser, Stahl, Pollard, Taylor and Blackford, charging that since June 11, 1942, they had assumed to act as members of the board of education of Community High School District No. 229, without any authority or warrant in law. Defendants answered the complaint, justifying their membership on the board of education and

their actions by the proceedings incident to the formation of the district and their election as its directors. Plaintiffs replied to the answer, denying the valid organization of the district and alleging that, prior to the election, a large portion of the territory described in the petition filed on January 2, 1941, was legally detached from the non-high school territory of Wayne county and attached to Fairfield Community High School District No. 225, altering the boundaries and territory· of the proposed Burnt Prairie Community High School District. The cause was heard upon the pleadings and a stipulation of facts. Judgment was rendered finding defendants not guilty and awarding them costs. Plaintiffs prosecute this appeal.

By their stipulation and statement of facts filed in lieu of a report of the proceedings, pursuant to Rule 36, the parties have stipulated that all the proceedings for the organization of Burnt Prairie Community High School District were in strict accordance with section 89a of the School Law, that this district is a valid and duly organized high school district and that defendants are the duly elected, qualified and acting members of its board of education. The concession is qualified: "except and subject only to the contention made by Plaintiff in the trial court that such Community High School District never came into being, and was never legally created," because of the existence of the facts narrated with respect to the proceedings under section 96a. The petition filed for the detachment of territory from non-high school territory of Wayne county was stipulated to be in full compliance with section 96a. According to the stipulation, the single issue intended to be presented for our decision is the question whether the proceedings for purported annexation of a portion of the territory included in the petition to organize the Burnt Prairie Community High School District, in the time and manner recounted, as a matter of law, prevented and barred the organization of the district, as prayed in

the petition for its organization, by virtue of the election held on January 18, 1941, and the subsequent proceedings in connection therewith. The parties further state: "The question is not raised as to the jurisdiction over the territory included in the annexation proceedings; but the sole question is 'Does Burnt Prairie Community High School District Number 229 exist at all as a legal entity?'"

Plaintiffs insist that when the superintendent of schools filed the map in the office of the county clerk, the territory detached from the non-high school territory ceased to be a part of the non-high school territory and, from this moment on, became part and parcel of the Fairfield district. From this premise, they contend that the detachment and annexation of the territory in question to the Fairfield district effected such an alteration of the territory proposed to be organized as Burnt Prairie District as to render the petition for the proposed district void. No question is presented as to the legal existence of the Fairfield district, either as it obtained in territorial extent prior to the annexation proceedings or subsequent thereto.

From the facts recounted it appears that the proceedings for the organization of a community high school district under section 89a of the School Law have been legal in every respect. It likewise appears that the proceedings for the detachment of a portion of the territory involved in the proceedings under section 89a and its attachment to an existing community high school district, under section 96a of the School Law, have been in literal compliance with the statute. The result of strict compliance with the provisions of sections 89a and 96a is confusion, at any rate, to the parties. The proceedings initiated under section 96a were carried to completion the day before the election to vote on the establishment of the new community high school district. Plaintiffs' contention is that, in consequence, the annexation proceedings had the legal effect of rendering the election held on January 18, 1941,

and all the prior proceedings in connection with the organization of the new district, void. The issue is not, as in the recent case of *People ex rel. Groff* v. *Board of Education of Community High School District No. 120,* 383 Ill. 166, whether the strip of territory in question belongs to a newly and validly organized school district or, instead, to an already existing community high school district. Here, a decision sustaining plaintiffs' contention would have the practical effect of destroying the legal existence of Burnt Prairie Community High School District. A franchise is, consequently, involved. *People ex rel. Gamble* v. *McKinstry,* 379 Ill. 528.

Section 89a of the School Law, as it obtained on January 2, 1941, provided for the organization of a community high school district out of non-high school territory. In particular, provision was made for the filing of a petition signed by fifty or more legal voters with the county superintendent of schools of the county in which the territory, or a greater part, was situated, the calling of an election for the purpose of voting for or against the proposition of establishing a community high school, notice of the election, the appointment of judges, and the form of the official ballot. If the election was favorable to the establishment of a community high school, section 89a provided, further, for the holding of an election within thirty days to select a board of education.

Section 96a provides for the annexation of non-high school territory to an existing high school district. Specifically, this section provides that when a petition is filed with the county superintendent of schools of any county wherein a non-high school district is located, signed by a majority of the legal voters residing in any territory within the non-high school district, the territory being contiguous and adjacent to any community or township high school district, and also signed by a majority of the legal voters residing in such community or township high school dis-

trict, asking that the territory within the non-high school district be detached and added to the community or township high school district, the territory shall be detached from the non-high school district and added to the· community or township high school district, "and it shall be the duty of said county superintendent of schools, within thirty (30) days after said petition is filed with him as aforesaid, to make and file with the county clerk of his county, a map showing the new and added boundaries of said community or township high school district as requested in said petition, and from the filing of said map in the office of the county clerk as aforesaid, said territory so detached from said non-high school district shall cease to be a part thereof, but from thence said territory shall be a part and parcel of said community high school district or of such township high school district, as the case may be." Provision is made for the form of the petition and for affidavits to be attached thereto.

In the case at bar, the annexation proceedings were completed by the filing of the map by the county superintendent of schools with the county clerk on. January 17, 1941, the day before the election called to vote on the proposition of the establishment of a community high school district in territory including the territory covered in the annexation proceeding. There has been, as narrated, compliance with both section 89a and 96a of the School Law. Determination of whether the proceedings first instituted were rendered completely nugatory by the annexation proceedings is dependent upon whether these sections are so independent of each other as to be irreconcilable or, instead, whether they may be harmonized in order to render each effective. If both proceedings stand in their entirety, disorder and confusion arise from the chaotic situation of two community high school districts being vested with jurisdiction over the same territory. If the subsequent proceeding prevails here, to the extent that it prevented

the legal inception of a new community high school district, as plaintiffs insist, a ministerial officer, the county superintendent of schools enjoys the power, for all practical purposes, to determine whether an election, under section 89a, shall or shall not be valid. If, on the other hand, the proceeding first placed in motion takes precedence over the second proceeding, as defendants maintain, the confusion otherwise resulting, will, at least, be minimized.

A cardinal canon of statutory construction is to ascertain the intent of the legislature by considering not only the language used but also the evil to be remedied and the object to be attained. (*Svithiod Singing Club* v. *McKibbin,* 381 Ill. 194; *Jones* v. *Pebler,* 371 Ill. 309; *Schoellkopf* v. *DeVry,* 366 Ill. 39; *People ex rel. Auburn Coal and Material Co.* v. *Hughes,* 357 Ill. 524.) If the language employed admits of two constructions, one of which makes the enactment mischievous if not absurd, and the other renders it reasonable and wholesome, the construction leading to an absurd result should be avoided. (*Inter-State Water Co.* v. *City of Danville,* 379 Ill. 41; *People* v. *Continental Illinois Nat. Bank and Trust Co.* 360 Ill. 454; *Ketcham* v. *Board of Education,* 324 Ill. 314.) Where the enactment of a series of statutes results in confusion and consequences which the legislature may not have contemplated, the acts must be construed in such a way as to reflect the obvious intent of the legislature and permit the practical application of the statutes. (*York Community High School District* v. *Wagemann,* 375 Ill. 193.) To accomplish this end, the provisions of a statute are to be construed together in the light of the general purpose and object of the act in order to effectuate the main intent and plan therein expressed. If this intention can be collected from the statute, words may be modified, altered or even supplied so as to obviate any repugnancy or inconsistency with the legislative intention. (*Burns* v. *Industrial Com.* 356 Ill. 602; *Ketcham* v. *Board of Education,* 324 Ill. 314; *Hoyne* v.

*Danisch,* 264 Ill. 467.) Again, since statutes are to be construed according to their intent and meaning, a situation which is within the object, spirit and meaning of a statute is regarded as within the statute although not within the letter. (*Burke* v. *Industrial Com.* 368 Ill. 554.) Conversely, a situation within the letter is not regarded as within the statute unless also within the object, spirit and meaning of the statute. *U. S. Industrial Alcohol Co.* v. *Nudelman,* 375 Ill. 342.

Application of these familiar rules of construction discloses that if section 96a grants to the county superintendent of schools, as plaintiffs urge, complete discretion as to the time of filing, with the county clerk, the map showing the new and added boundaries of an already existing community or township high school district, in situations such as presented in the case at bar and in *People ex rel. Groff* v. *Board of Education of Community High School District No. 120,* 383 Ill. 166, he enjoys plenary authority to determine whether a particular parcel of non-high school territory will be included in a new community high school district, or, instead, attached to an already existing community high school district. In short, the county superintendent would be vested with power subject entirely to his own caprice or whim to decide whether the proceeding first initiated should be concluded first or after the completion of the second proceeding, namely, the annexation proceeding. Here, if the county superintendent was authorized to complete the annexation proceedings prior to the election pursuant to section 89a, the election, to the extent, in any event, that the strip in controversy is concerned, would be a futile act. Adherence to the strict letter of the law would thus produce absurd consequences. While the language of the statute authorizing and directing the superintendent to file the map within thirty days after presentation of the petition for annexation to him is permissive with respect to the time of filing, his au-

thority in this regard is not unfettered. A ministerial duty devolves upon the superintendent to comply with both sections of the statute. He cannot elect to comply with the annexation provisions, and, at the same time, ignore and decline to perform his ministerial duties prescribed by section 89a. To construe the statute, as contended by plaintiffs, namely, that the annexation proceedings took precedence and absolutely destroyed the Burnt Prairie Community High School District, would be to attribute to the General Assembly an intent to clothe the county superintendent of schools with absolute power and authority over the disposition of non-high school territory. If the annexation proceedings nullified the petition for election under section 89a, it becomes impossible to establish a community high school district including territory adjacent to an already organized school district without being subject to the constant threat and probability of the establishment proceeding being defeated by the filing of an annexation petition at any time prior to the election. The spirit and intent of section 89a is that a proceeding in full compliance with its provisions shall be carried to the point of holding an election upon the proposition of the establishment of a community high school despite a subsequent proceeding initiated under section 96a. Similarly, the object and meaning of section 96a is that the county superintendent shall exercise reasonable discretion in filing a map showing the new and added boundaries of an existing community high school district where an election has been called for the purpose of voting to establish a community high school for territory including the territory shown on the map. The intent is not, as plaintiffs insist, that the annexation proceeding should supersede the proceedings under section 89a and render the two elections held in compliance with its provisions nullities. It follows necessarily that the county superintendent cannot arrogate to himself the power to determine whether the remedy afforded by sec-

tion 89a shall be effective or ineffective by precipitate action on a petition and map under section 96a.

The persons who signed the petition requesting the county superintendent to call an election to vote on the proposition of organizing a community high school district could not have withdrawn their names from the petition after preliminary action had been taken on it, namely, the calling of the election to vote on the establishment of a community high school, and prior to the election called on January 18, 1941. (*People ex rel. Stout* v. *Drennan,* 307 Ill. 482.) Under section 96a, it was possible for some of the petitioners to sign the application for the annexation of the strip in question to the already existing high school district. A rational construction of the two sections of the School Law would forbid final action on an annexation petition signed by persons who had already signed a petition seeking an election to vote on the question of establishing a new high school district.

*People ex rel. Pfeiffer* v. *Morris,* 365 Ill. 470, decided upon analogous rather than parallel facts, sustains our conclusion. The county superintendent of schools of Sangamon county received, filed and acted upon a proper petition for the organization of a high school district known as the Dawson district. Subsequent petitions embracing territory included in the petition already on file, contrary to the provisions of section 89b of the School Law, were held to be improper petitions although signed by a sufficient number of legal voters of the territory and, in consequence, no duty rested on the county superintendent to act upon the later petitions and call elections thereon. Construing section 89b, we said: "Obviously it could not have been the intention of the legislature to give free-for-all voting on as many petitions as may have the required number of signers regardless of overlapping territory. Such a rule would permit the organization of more than one community high school district over the same territory. Such has

in fact been the result in the cases before us. Under section 89b, as we construe it, a proper petition is one which does not include within the bounds of the proposed district, territory included in another petition already on file with the county superintendent of schools. That the legislature could not have intended otherwise is clearly shown by the confusion that has arisen in these cases. All this confusion could have been avoided by a proper understanding of the statute." Our observation is singularly applicable here.

We hold that a petition filed conformably to the provisions of section 96a which includes territory included in another petition already on file with the county superintendent of schools, pursuant to section 89a, is not a petition which requires disposition by the superintendent prior to the election called on the first petition, and, further, that the annexation proceedings do not prevent the legal inception of a new community high school district where the vote at the election is favorable to the establishment of a community high school.

The judgment of the circuit court is right, and it is affirmed.

*Judgment affirmed.*