The People of the State of Illinois, on the Relation of W. C. Petty, County Superintendent of Schools of Lake County, Illinois, Appellant, v. Community High School District No. 128, a Municipal Corporation, et al., Appellees, and Consolidated High School District No. 120, a Municipal Corporation, Appellant.

Gen. No. 64–29.

Second District.

July 28, 1964.

Bruno W. Stanczak, State's Attorney for Lake County, of Waukegan, for plaintiff-appellant, and Sidley,

Austin, Burgess & Smith, of Chicago, for defendant-appellant (D. Robert Thomas, James W. Kissel and John B. Schwemm, of counsel).

Norman, Engelhardt, Zimmerman, and Franke & Lauritzen, of Chicago (Harold W. Norman and Allyn J. Franke, of counsel), for appellees.

CARROLL, J.

This is a quo warranto proceeding brought by the State's Attorney of Lake County on the relation of the Superintendent of Schools of that county attacking the legality of the organization of Community High School District No. 128 (referred to herein as District 128).

The complaint charges that all of the proceedings under which said District was organized are null and void; that Consolidated High School District No. 120 (referred to herein as District 120) is the duly constituted school district embracing all of the territory comprising District 128, the legal description of which is set out in full; and certain individuals were purportedly elected as the Board of Education of District 128 and without authority are exercising the powers and duties of such a Board over the territory described in the complaint. Both districts and the individual members of the Board of Education of District 128 were joined as defendants. All of the defendants answered. In substance the answer of District 128 and the individual defendants denied that the organization proceedings establishing the new district were null and void and averred that such district was legally and properly organized and that the individual defendants were duly elected members of its Board of Education. In addition to its answer District 120 filed a cross complaint against District 128 praying that the latter and the individual defendants be ousted from exercis-

446

ing any jurisdiction over the territory described in the complaint.

The Circuit court of Lake County heard the cause on the pleadings and a written stipulation of facts and entered judgment for District 128 and the individual defendants, holding that said district is the duly constituted high school district governing the territory described in the complaint; that the individual defendants are the duly elected members of the Board of Education of District 128 and ordering that the prayer of the cross complaint be denied. Both the plaintiff and defendant District 120 have appealed.

District 120 embraces, generally, Fremont and Libertyville Townships in Lake County, including the Villages of Libertyville and Mundelein. It has been operating two high schools, one in Libertyville and the other in Mundelein. The Libertyville High School is located in the territory described in the complaint the boundaries of which coincide with the attendance boundaries of District 128. On May 16, 1963 a petition was filed with W. C. Petty, County Superintendent of Schools of Lake County, signed by 128 legal voters residing in the territory described in the complaint, in which the said county superintendent, pursuant to the provisions of sections 12–1 to 12–4 of Article 12 of the Illinois School Code was petitioned to call an election in said territory for the purpose of voting for or against the proposition to establish a Community High School for the benefit of the residents of said territory. As required by section 12–4 of the School Code a copy of the petition was forwarded to the State Superintendent of Public Instruction for his consideration. He in turn filed a report in which he held the territory involved to be compact and contiguous and that the petition contained proper facts for submitting to the voters the proposition to establish a community high school in said territory. In addition

the report dealt at some length with the financial problems which the proposed new district might encounter. Having determined the petition to be sufficient to meet the requirements of section 12–4, these and the additional observations of the State Superintendent would not appear to be pertinent to the issue we are called upon to resolve. An election was held October 26, 1963 with the following results: 1826 voted in favor of the proposition and 1205 against it. All those voting in the election were legal voters residing in the territory described in the petition. On October 28, 1963 the County Superintendent declared that as a result of the said election the territory described in the petition was duly created into a community high school district which he designated Number 128 of Lake County, Illinois. On November 23, 1963, the individuals named as defendants herein were elected as the Board of Education of said district.

The basic question involved in this case may be thus stated: Does the Community High School District Act (Article 12, sections 12–1 to 12–4 of the School Code) allow the inclusion of territory of an operating high school district within the boundaries of a new community high school district?

Section 12–1 of the School Code is as follows:

"Upon receipt of a petition signed by 100 or more voters residing in any contiguous and compact territory having a population of not less than 2000 persons and an equalized assessed valuation of not less than $6,000,000 based upon full, fair cash value as equalized or assessed by the Department of Revenue for the year immediately prior to the filing of said petition, whether in the same or different townships described in the petition and after compliance with Section 12–4, the county superintendent of schools of the coun-

448

ty in which the territory or the greater part thereof is situated shall order an election to be held for the purpose of voting for or against the proposition to establish a community high school. . . ." Ill Rev Stats 1963, chap 122, 21–1.

That in establishing District 128 full compliance was had with the code sections 12–1 to 12–4 appears to be conceded by plaintiff. However, it is contended that the authority to establish a community high school as set out in said sections of the code may not be exercised where, as in this case, the territory involved is a part of an existing high school district. Plaintiff insists that under such conditions the applicable authority is that found only in section 7–1 Article 7 of the School Code. The portion of said section referred to reads as follows:

"New school districts lying entirely within any county may be created and the boundaries of existing school districts lying entirely within any county may be changed by detachment, annexation, division, dissolution or consolidation or any combination thereof by the county board of school trustees of such county when petitioned by the boards of each district affected or by a majority of the legal voters residing in each district affected or by two-thirds of the legal voters residing in any territory proposed to be detached from one or more districts or in each of one or more districts proposed to be annexed to or consolidated with another district. . . ."

That the procedure outlined in section 7–1 could have been followed in organizing District 128 is not disputed by defendants. However, they do not agree with plaintiff's theory that the power vested in the County Board of school trustees to create new school

449

districts or change school district boundaries represents the exclusive authority to create a new community high school where it includes territory of an existing high school district.

██ Present in the controversy between the parties to this action are certain factors beyond the realm of argument which we think mitigate strongly against defendants' argument. The Community High School District Act was adopted in 1919. It has remained in full force and effect without change since its enactment. In plain and unambiguous language it grants authority to organize a community high school in *any contiguous and compact territory having a population of not less than 2,000 persons and an equalized assessed valuation of not less than $6,000* (emphasis supplied). Admittedly there can be no argument concerning the meaning of such language. Hence we have a situation which leaves no room for construction by a court. Where words are plain and the legislative intention is manifest courts are required to give effect to such intention. Sup v. Cervenka, 331 Ill 459, 163 NE 396; Downs v. Curry, 296 Ill 277, 129 NE 761. It would also seem pertinent to note that when the School Code was rewritten in 1961 the language of said section 12–1 was not changed. If, as plaintiff argues, the territory upon which section 12–1 may operate must not include any part of an existing high school district we think it logical to assume that the failure of the 1961 legislature to impose such a restriction demonstrates a legislative determination that the method of establishing a community high school as originally designed required no modification. The history of school legislation in Illinois indicates no reluctance on the part of the legislature to change the procedures for creating school districts or altering the boundaries of the same. For example the Community Unit School District Act as adopted in 1947

contained the following: "Upon receipt of a petition signed by one hundred (100) or more legal voters residing in any contiguous or compact territory. . . ." (Section 8–9, c 122 Revised Statutes, 1947). These are the exact words which appear in the Community High School Act. In 1949 the legislature amended said section 8–9 by adding after the word territory the following: "no part of which is included within any community unit school district." We think the action of the legislature in changing the requirements of a petition under the Unit District Act is significant in considering plaintiff's contention that a court should read into the Community High School Act a restriction limiting the same to territory not included in a high school district. In People ex rel. Roan v. Wilson, 405 Ill 122, 90 NE2d 224, the court was confronted with the identical argument advanced by plaintiff in the case at bar, where a new community unit district had been organized in 1948 under the 1947 Act. The validity of the organization of the new district was challenged on the ground that it took in territory contained in two existing community unit districts. It was argued that there should be read into the 1947 Act a limitation as to the territory to which it should apply. In rejecting such argument the court said:

"The very fact that in 1949 the legislature amended the School Code in section 8–9 to read: 'Upon the receipt of a petition signed by 200 or more voters residing in any contiguous and compact territory, no part of which is included within any community unit school district' is indicative of the attitude of the General Assembly toward this Section. (Ill Rev Stats 1949, chap 122, par 8–9) It is obvious that the legislature knew that the very thing objected to by the plaintiffs here was possible under the plain meaning of the words contained in the section. Had it been as apparent

451

as the plaintiffs contend that the section did not allow the action complained of here, the amendment of 1949 would have been unnecessary and worthless to add to, or detract from, the powers given by the act itself.

"It is impossible to understand any plainer meaning than that given by the very words themselves, that an election must be called by the county superintendent of schools upon the requisite petition being filed with him. Under these circumstances, and where there is no limitation given, school districts could be formed incorporating portions of already incorporated community unit school districts, as was done in this particular cause. . ."

If as held in Roan the words "any territory" were incapable of being construed as meaning territory not a part of already incorporated districts, we perceive no reason justifying the application of a contrary rule in the instant case. We can only conclude that had the legislature intended to restrict the meaning of "any territory" it would have done so by adding appropriate language to such effect. It failed to do so. Since courts lack legislative powers we are not permitted to add words to a statute to change its meaning. Anderson v. Board of Education of School Dist. No. 91, 390 Ill 412, 61 NE2d 562.

Plaintiff maintains that Article 12 does not authorize the division of an existing district or the detaching of territories therefrom and that the trial court erroneously assumed that language should be read into sections 12-1 12-4 of said Article authorizing such a division or detachment. If such a contention is to be sustained it can be done only by assuming that the authority to organize a community high school district conferred under Article 12 is limited or has

452

been nullified by the provisions of Article 7 relating to changing boundaries of school districts. That District 128 could have been established by proceeding under Article 7 of the Code is not disputed by defendants. However in this case the petition was directed to the County Superintendent of schools pursuant to Article 12 which provides a method for creating a community high school. The fact that an alternate method was available under Article 7 is without significance so far as the authority conferred by Article 12 is concerned. Obviously to agree with plaintiff's contention the trial court would have been required to read into Article 12 a provision that the authority therein granted is limited to territory not already a part of an established high school district. Admittedly, the procedure followed in this case fully met the requirements of Article 12. Since the language of such article is plain and unambiguous and incapable of any meaning other than that expressed therein, it would seem that the trial court had no choice except to hold that the organization of District 128 met all requirements of the Statute.

The principle cases relied upon by plaintiff are People ex rel. Mills v. Fairfield School Dist. No. 225, 397 Ill 233, 73 NE2d 292 and People v. Funkhouser, 385 Ill 396, 52 NE2d 1014. In the latter case the county superintendent of schools acting on a petition to organize a community high school under section 8–9 of the School Law (the Community High School Act), ordered an election to be held January 18, 1941. On the day before the election the county superintendent acting on a detachment and annexation petition annexed part of the territory of the proposed new district to another district. The proposition to organize the new district carried at the election. Subsequently the authority of the Board of Education of the new district was challenged in a quo warranto proceeding.

453

The question presented was whether the annexation proceeding prevented organization of the new community high school. The court held that the organization petition had priority over the later filed petition for detachment and annexation. In Fairfield the factual situation was the same as that prevailing in Funkhouser. Citing the latter case the court held that the annexation proceeding did not take precedence over the proceeding for the formation of the new district. In neither Funkhouser nor Fairfield do we find any reference to the proposition that a community high school organized under Article 12 must not include any territory of an existing high school district. Accordingly we are unable to perceive the applicability of these authorities to the problem at hand.

We agree that Article 12 contains no language providing for division or detachment of territory of established districts. However we are not in accord with plaintiff's view that the absence of such language renders the procedure under said Article appropriate only for the areas of the state which have not yet been organized into a high school district. The object sought in this case was the establishment of a community high school. Detachment and annexation of territory as provided in Article 7 was not involved. Of necessity after the creation of the new district the territory included therein ceased to be a part of the old district. This was accomplished by a proceeding under Article 12 and resort to the provisions of Article 7 was rendered unnecessary. Accordingly we do not think the conclusion that the trial court read into Article 12 language authorizing detachment from an existing district is justified. Article 12 makes no reference to a change in boundaries of an established high school district. Boundary changes and the procedure governing the same are covered in Article 7. Article 12 is complete in itself and provides for the establish-

454

ment of a community high school. There is no inconsistency between the two articles and the fact that District 128 could have been organized under the Article 7 procedure does not render Article 12 inapplicable.

That in organizing new school districts either of two alternate methods may be followed has been emphasized in numerous cases. In The People v. Deatherage, 401 Ill 25, 81 NE2d 581.

> "The legislature has always adhered to the policy of never creating school districts by direct action. The policy has been to enact enabling legislation, whereby the resident voters of a defined area proposed for a school district of a certain type were given the responsibility of determining whether such district should be established. The intent of the people concerned was found by an election or by a petition. This policy is undoubtedly predicated upon the legislature's belief that persons primarily affected are the best judges of what type of school will best serve, or not serve them, within the bounds of the proposed district; this to be done against the background of local needs, desires and conditions. This policy caters to the concept of local self-government. . . . The residential standard to be met for voting on the proposition of organizing a community unit school district is: only those residing in the territory described in the petition for submitting the proposition may vote in the election. Evidently, in the opinion of the legislature, they are the most important group, not those who are residents of what would be the remaining portion of a fractioned district. . . . The legislature has always, as a matter of policy, left to the resident voters the settlement of all questions involving

school district territory. . . . The resident voters of the particular territory are the delegated agents of the legislature to administer the enabling legislation, thereby implementing the legislative intent to obey the constitutional mandate of insuring an efficient and thorough common schooling for all the children of the State via free public schools, open to all without discrimination."

In The People v. Camargo School Dist. No. 158, 313 Ill 321, 145 NE 154 (cited in Deatherage) the court said:

"Ever since there has been a school law in this State the fundamental principle for the establishment of school districts has been that they should be such as the convenience and wishes of a majority of the inhabitants required. The law has provided for the ascertainment of such wishes and convenience either by petition signed by a majority or more of the legal voters or by elections held for the purpose, and districts have been created, changed, added to, diminished, consolidated and divided upon petitions of the voters to the school authorities and elections."

That in certain situations the election method is the more practical is pointed out in People ex rel. Smail v. Board of Education, 343 Ill App 362, 99 NE2d 385, where the court observed:

"It appears to us that the last paragraph of Section 8–14 is designed to provide an alternate method of detaching and annexing territory whenever such alternate method is or seems feasible. If the territory sought to be annexed is large and contains a great number of voters, it would seem highly impractical or perhaps impossible to obtain a petition signed by two-thirds of the legal voters. In such a case, the proposal for annexation

456

is required only to be signed by at least fifty voters or twenty per cent of the legal voters. At an election called for that purpose, it requires only a majority vote. On the other hand, if a territory sought to be annexed were quite small, where there were only one or two legal voters living in the area, it would seem highly desirable to eliminate the necessity of the expense of an election. The desires of the resident voters of the territory involved could quite easily be expressed by a petition signed by two-thirds of them."

In the case at bar the territory of District 128 is large and has over 9000 residents. The difficult problem involved in obtaining the signatures of the necessary legal voters to a petition is apparent.

■ ■ There remains for consideration plaintiff's insistence that if the trial court's order is sustained absurd and inequitable consequences will follow. It is suggested that as a result future attempts to organize other community high school districts in the area included in the old 120 district will be undertaken. Whether plaintiff's apprehensions are well founded will not be considered by this court. If the operation of a law permits the accomplishment of mischievous or absurd results which plaintiff foresees the remedy is to be found in the legislature and not the courts. We are here concerned solely with the question whether a court may read into Article 12 a provision confining the operation thereof to territory not included in an existing high school district. We are convinced that such question must be resolved in the negative.

For the reasons indicated the judgment of the Circuit Court is affirmed.

Affirmed.

ABRAHAMSON, P. J. and MORAN, J., concur.